# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Centra
155 East 44th Street - 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

May 26, 2021

**REQUEST FOR APPROVAL
OF AN FLSA SETTLEMENT**

**BY ECF**

Hon. Robert M. Levy, U.S.M.J.
United States District Court
Eastern District Court
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:   *Torres, et al. v. Gino's of Bayside, LLC, et. al.*
>   <u>Case No. 20 Civ. 3083 (RML)</u>

Dear Judge Levy,

     We are counsel to the plaintiffs in the above-referenced action, and jointly submit this letter together with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this dispute, which was negotiated at arm's length between experienced counsel, as well as with the assistance of a mediator during a mediation conducted on April 6, 2021.

## I.   *The Need for the Court's Approval of the Agreement*

     As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised

Robert M. Levy, U.S.M.J.
May 26, 2021
Page 2

stipulated settlements. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

### *II.  Plaintiffs' Claims for Unpaid Wages*

Plaintiffs consist of four (4) former employees hired to work for the defendants' restaurant in both tipped and non-tipped capacities as kitchen helpers/food preparers, dishwashers, cooks, and busboys. The following is a brief synopsis as to each plaintiff's claim:

- Porfirio Torres

Plaintiff, Porfirio Torres, alleges working for the defendants as a busboy from in or about September 2010 until on or about March 15, 2020. Mr. Torres alleges that, although his work schedule fluctuated slightly each day and week, he typically worked the following number of hours:

- July 2014 – December 2017: 49 hours per week[1]
- January 2018 – March 15, 2021: 40 hours per week (sometimes more).

With respect to his pay, Mr. Torres alleges being paid on an hourly basis straight time for all hours worked. He alleges being paid as follows:

- July 2014 – December 2014: $5/hour
- January 2015 – December 2017: $7.50/hour
- June 2018 – mid-February 2020: $8/hour
- Mid-February 2020 – March 15, 2020: $8.50/hour

- Mauricio Torres

Plaintiff, Mauricio Torres, alleges working for the defendants as a food preparer/kitchen helper from on or about July 18, 2016 until on or about March 15, 2020. Mr. Torres alleges that, although his work schedule fluctuated slightly each day and week, he typically worked approximately fifty-eight (58) hours per week, with an average of two (2) spread of hour shifts per week.

With respect to his pay, Mr. Torres alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

- July 2016 – December 2016: $640/week
- January 2017 – July 2018: $680/week
- August 2018 – August 2019: $700/week

---

[1] The six (6) year limitations period associated with Mr. Torres's claims begins in July 2014.

> September 2019 – March 15, 2020: $750/week.

- <u>German Zavala</u>

Plaintiff, German Zavala, alleges working for the defendants as a busboy from in or about July 2013 until on or about March 15, 2020. Mr. Zavala alleges that, although his work schedule fluctuated slightly each day and week, he typically worked between approximately forty-nine (49) and fifty-three (53) hours per week, with an average of three (3) spread of hour shifts per week.

With respect to his pay, Mr. Zavala alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> July 2014 – September 2018: : $350/week
> October 2018 – March 15, 2020: $400/week

- <u>Oscar Salazar</u>

Plaintiff, Oscar Salazar, alleges working for the defendants as a dishwasher and salad preparer before ultimately being promoted to a cook in or about 2011. Mr. Salazar worked for the defendants until on or about March 15, 2020. Mr. Salazar alleges that, although his work schedule fluctuated slightly each day and week, he typically worked approximately seventy-two (72) hours per week, with six (6) spread of hour shifts per week.

With respect to his pay, Mr. Salazar alleges being paid on a salary basis straight time for all hours worked. He alleges being paid as follows:

> July 2014 – December 2017: $750/week
> January 2018 – February 2020: $900/week
> March 2020: $950/week

### III. <u>Defendants' Position/Financial Abilities</u>

It is the defendants' position is that plaintiffs were paid in full for all hours worked and that they are entitled to no unpaid wages. Defendants maintained some payroll records during the relevant time period, but acknowledged record-keeping deficiencies. Defendants alleged that plaintiffs' regular rate of pay was in excess of either the statutory minimum wage or the lesser "tip credit" minimum wage and that they were paid at time and one-half for hours worked over forty (40) each week

Additionally, it should be noted that the individual defendant, Michael Molinari, passed away suddenly on November 16, 2020.

## IV. Proposed Settlement

The parties and their counsel have determined that the interests of all concerned are best served by settling and exchanging a release of all wage and hour claims stemming from plaintiffs' employment, and dismissing this action with prejudice in exchange for $180,000.00. Based upon the reasons outlined in this letter, the parties respectfully request the Court enter an order approving the settlement as fair and reasonable and dismiss the case with prejudice.

## V. The Proposed Settlement is Fair and Reasonable

The parties have analyzed the settlement as "fair and reasonable." The frequently-cited *Wolinsky* analysis requires the parties to analyze "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic, Inc.,* 900 F.Supp.2d 332, 335-6 (S.D.N.Y. 2012). For the reasons described below, the proposed settlement satisfies these factors.

*Plaintiffs' Damages:*

Plaintiffs' counsel calculated Plaintiffs' damages during the relevant time period. If fully successful, based on Plaintiffs' damage calculations, they would have jointly been entitled to approximately $375,000, plus liquidated damages, interest and attorneys' fees. However, the defendants vehemently denied that plaintiffs were paid in violation of the law. While plaintiffs believed that the wage and hour records corroborated their claims and would have ultimately been successful at trial, the ultimate outcome was still unpredictable and the burden of proof for all parties was expected to be difficult. Even if successful at trial, there was no guarantee that the trier of fact would have awarded plaintiffs the full amount of damages estimated by plaintiffs' counsel. It was more likely that plaintiffs would have been awarded a lesser amount.

Moreover, the settlement was reached with the assistance of an experienced mediator, Andrew Kimler, Esq. Mr. Kimler has deep experience with FLSA cases, and his assistance was valuable. The parties appreciate his service in this case.

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.,* 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States,* 679 F.2d 1350,

1354 (11th Cir. 1982). In this case, collectability of a large judgment would have been a factor.

*Attorneys' fees:*

Plaintiffs' counsel has incurred approximately $750.00 in expenses for the cost of this litigation to date for filing and mediation. Additionally, plaintiffs' counsel has spent significant time on this matter analyzing the voluminous payroll practices/records, doing informal discovery, and engaging in settlement negotiations/mediation, and will continue to spend time overseeing the payment of the settlement over the course of the next year and one-half.

Accordingly, the total settlement amount of $180,000.00 will include reimbursement of costs in the amount of $750.00, followed by distribution as follows: one-third to counsel, and the remainder of the settlement sum payable to Plaintiff Porfirio Torres (12.7%), Plaintiff Mauricio Torres (31.3%), Plaintiff German Zavala (19.7%), and Plaintiff Oscar Salazar (36.3%). This breakdown is based on plaintiffs' respective lengths of employment, hours worked, and pay received. Plaintiffs are in agreement with this breakdown, which is consistent with their retainer agreement with counsel, and accept it as fair and reasonable in light of the above.

Attorneys' fees in FLSA settlements are properly examined, to ensure that the interests of plaintiff's counsel did not adversely affect the extent of the relief counsel procured for the clients. *Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Plaintiffs' counsel expended more than eighty (80) hours of attorney time in the case. The attorney time involved meeting with the plaintiffs on multiple occasions prior to and after filing the complaint; drafting the lawsuit; reviewing and analyzing extensive and voluminous wage and hour records; calculating plaintiffs' estimated damages using various methodologies; participating in good faith in the settlement negotiations; and drafting/executing the written agreement, and seeking this court's approval.

Of the total settlement, counsel for plaintiff seeks one third (33%), in satisfaction of attorneys' fees and $750 for out-of-pocket costs (the filing fee and mediator's fee). The retainer agreement with the plaintiffs provides for one-third (1/3) and this is consistent with the attorneys' fees permitted in other similar cases.

Indeed, early resolution does not favor Plaintiffs' counsel, as protracted litigation would have led to increased costs and expenses, while plaintiffs themselves may not have fared any better.

Robert M. Levy, U.S.M.J.
May 26, 2021
Page 6

### VI. Efficiency and Litigation Risks

Both factual and legal disputes presented risk to the defendants' defenses and plaintiffs' likelihood of recovering the full amount of damages outlined above.

Though the parties differ in their respective positions as to the claims alleged in the Complaint, all parties recognize the risk associated with this litigation. Significant arms-length negotiation occurred that has resulted in an agreement in principle to settle the matter for $180,000.00. The adversarial nature of this litigation weighs in favor of finding the proposed settlement to be fair and reasonable and not the result of overreaching on the part of the employer. Indeed, the case ultimately settled following informal discovery and settlement discussions between counsel and with their parties participating. Both sides were represented by experienced attorneys well prepared to discuss the risks and possible outcomes (appreciating their own strengths and weaknesses), had we not resolved.

The written settlement agreement (the "Settlement Agreement"), is annexed as Exhibit "A".

### VII. Conclusion

For all of these reasons, on behalf of all parties, we respectfully request that the Court approve the settlement, and dismiss the case. The parties and counsel are available to the court at its convenience in the event the Court has any questions about the settlement reached in this case.

On behalf of all parties, we thank the court for its consideration of this matter.

Respectfully submitted,

Justin Cilenti

cc:   David Mahoney, Esq. (by ECF)